**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            jsmith@bursor.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX OBERTMAN, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>    v.<br><br>ELECTROLUX HOME PRODUCTS, INC.,<br><br>                              Defendant. | Case No. 2:19-cv-02487-KJM-AC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Felix Obertman ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Electrolux Home Products, Inc. ("Electrolux" or "Defendant") for the manufacture, marketing, and sale of Frigidaire Dehumidifier products identified below. Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF ACTION

1.      This is a class action against Defendant Electrolux Home Products, Inc. for the manufacture and sale of certain Frigidaire Dehumidifiers including model numbers FFAD3033R1, FFAD5033R1, FFAD7033R1, (collectively, the "Products"), all of which suffer from an identical defect in design.  Specifically, the Products' defective design causes the Products to display an "F0" error message on the Products' control panel.  This defect renders the Products completely useless.

2.      Plaintiff brings claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; (3) unjust enrichment; (4) breach of implied warranty; (5) violation of California's False Advertising Law ("FAL"), Cal. Bus & Prof Code § 17500, and (6) violations of the Magnuson-Moss Warranty Act.

## PARTIES

3.      Plaintiff Felix Obertman is, and at all times relevant to this action has been, a resident of Elk Grove, California.  In approximately the summer of 2017, Mr. Obertman purchased a Frigidaire Dehumidifier bearing model number FFAD7033R1 from a Best Buy store located in Elk Grove, California for approximately $400.  Mr. Obertman purchased the Product because he believed it was fit for use as a dehumidifier.  However, the Product Mr. Obertman purchased was not fit for use as a dehumidifier due to the Product's defective nature.  Mr. Obertman would not have purchased the Product had he known that the Product was unfit to perform its intended purpose, rendering the Product useless.

4.      The F0 Error Message defect manifested in the Product approximately one year after Mr. Obertman purchased it.  Mr. Obertman threw the Product in the trash because it was useless.  Mr. Obertman disposed of the Product long before he ever contemplated litigation.

5.      Mr. Obertman reviewed the Product's packaging prior to purchase.  Defendant disclosed on the packaging that the Products were dehumidifiers and described features typical of dehumidifiers but did not disclose the defect.  Had there been a disclosure, Mr. Obertman would not have bought the Product because the defect would have been material to him, or at the very least, he would have purchased the product at a substantially reduced price.  Mr. Obertman relied on the packaging in making his purchase decision.

6.      Mr. Obertman wants to purchase Defendant's Products in the future because of the benefits dehumidifiers offer.  Mr. Obertman regularly visits stores where Defendant's Products are sold.  However, he cannot be sure that Defendant's Products will perform as intended.

7.      Defendant Electrolux Home Products, Inc. is a Delaware corporation with its principal place of business at 10200 David Taylor Drive, Charlotte, NC  28262.  Defendant manufactures, markets, and distributes the Products throughout the United States.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District because Plaintiff purchased his Product in this District and reside in this District.

## COMMON FACTUAL ALLEGATIONS

### I.     The "F0" Error Message Defect

11.     Defendant Electrolux is a worldwide leading manufacturer of home appliance products.  Among the various appliances manufactured and sold by Defendant are Frigidaire Dehumidifiers bearing model numbers FFAD3033R1, FFAD5033R1, FFAD7033R1.  From a functional and manufacturing standpoint, the Products are nearly identical.  The only material difference among the Products is their tank sizes from which Products draw water (30, 50, or 70 pints, respectively).

12.      The Products were made defectively, causing an "F0" error message to appear on the Products' display screen (hereinafter, the "Product Defect" or "F0 Error Message").  An example is shown below:



13.     Once the F0 Error Message appears, the Product no longer functions as a dehumidifier.  The Product Defect is substantially likely to materialize during the useful life of the Product.

14.     With thousands of units sold at approximately $289-$389 each, Defendant has profited enormously from its failure to disclose the Product Defect sooner.  Defendant's Product sales continue to this day.

15.     The Product Defect at issue here involves a critical functional and electrical component of the Products, and no reasonable consumer would spend hundreds of dollars on a dehumidifier had he or she known it was substantially likely to manifest a defect during the Products' useful lifespan, rendering it useless.  Defendant had exclusive knowledge of the Product Defect, which was not known to Plaintiff or class members.

16.     Defendant made partial representations to Plaintiff and class members while suppressing the Products' defective nature.  Specifically, by displaying the Products and describing their features, the product packaging implied that the Products were suitable for use as dehumidifiers, without disclosing that they had a critical defect that could result in the Products being rendered completely useless.

## II.     Defendant's Pre-Sale Knowledge Of The Defect

### A.     Defendant Received Complaints On Its Own Website Directly From Customers

17.     Defendant has known about the F0 Error Message defect for at least 4 years, as is evidenced by numerous consumer complaints concerning the F0 Error Message posted to Defendant's own website.   Defendant is clearly aware of all of the complaints posted to its website because Defendant monitors its own website and also has an internal customer service team dedicated to responding to consumer comments and complaints.  Below is a small sample of Product reviews/complaints posted to the Products' webpage on Frigidaire.com.

18.     For instance, approximately 4 years ago, a consumer left a review on Defendant's website which stated that the Product "fail[ed] in 6 months" and that "[t]he unit stopped working and displayed an error Code F0…"

19.     Approximately 4 years ago, another consumer complained that the Product was "dead on arrival" and that "the display showed a fault code of F0."  This consumer also stated that he spoke to an employee of Defendant over the phone about this issue.

20.     Approximately 4 years ago, another consumer stated "I was happy with the working of the unit until the fault display started showing FO.  I checked voltages etc. and could not find anything wrong.  I am disappointed that the unit did not last past 3 months."

---

21.     Approximately 4 years ago, another consumer complained "I have a fault code (FO) after using it only 3 months."

22.     Over 3 years ago, another consumer stated that they "[h]ave had this unit for 10-11 months.  For the first ten it worked great, but over the last month I keep getting F0 code."  Shortly after this review was posted, an employee of Defendant by the name of CiCi specifically responded to it.

23.     Over 3 years ago, another consumer complained that the Product "quit running with the dreaded F0 code just beyond the two-year warranty."  Shortly after this review was posted, an employee of Defendant by the name of CiCi specifically responded to it.

24.     Over 3 years ago, another consumer complained that the Product was "good for the short time it lasted" but only "made it to 6 [months]."  The consumer continued that "despite regularly cleaning the filter… the unit threw the dreaded F0 error code."  Shortly after this review was posted, an employee of Defendant by the name of Courtney specifically responded to it in January of 2017.

25.     Over 3 years ago, another consumer stated "the appliance is now displaying the FO error code" and stated that they spoke with a customer service representative from Defendant to inquire about the F0 defect.  Shortly after this review was posted, an employee of Defendant by the name of Ruth specifically responded to it.

26.     Over 3 years ago, another consumer stated they "[u]sed about eight months (I don't use it during winter).  Turned on this Spring and it would not work and [i]t presented the dreaded 'FO' error/failure code.  After much research, that basically means y[ou] can't fix it for less than the price of a new one."  Shortly after this review was posted, an employee of Defendant by the name of Ruth specifically responded to it.

27.     Over 3 years ago, another consumer stated:  "I purchased this last year and used it for 3 months.  It showed an F0 code but since I didn't need to use it over the winter I forgot about that code.  I plugged it in today and again I am getting the F0 code.  I followed the directions in the product manual to no avail so I called customer service.  They told me there is nothing they can do for this problem and I need to buy another dehumidifier.  I then did more research and found this

F0 code to be a common problem and that Frigidaire tells other consumers the same thing, it is not repairable." (emphasis added).  Shortly after this review was posted, an employee of Defendant by the name of Courtney specifically responded to it.

28.     Over 3 years ago, another consumer stated that "This device worked very well when initially purchased. After a few months it began to stop unexpectedly with an F0 fault."  Shortly after this review was posted, an employee of Defendant by the name of Ruth specifically responded to it.

29.     Over 3 years ago, another consumer stated that "this Frigidaire unit lasted exactly 1(one) yr.  Unit quit working with a error code 'F0.'"  This consumer also stated that they spoke with a customer service representative of Defendant's about this issue.  Moreover, shortly after this review was posted, an employee of Defendant by the name of Ruth specifically responded to it.

30.     Over 3 years ago, another consumer stated that they "[o]nly used my Frigidaire FFAD7033R10 Unit for about 10 hours last year.  Turned it off for the winter and this Summer when I turn it on it gives me an F0 error code.  Customer service says because it has been 13 months since I purchased it they will not cover it under warranty.  Basically, a practically new $300 piece of garbage."  This customer not only spoke over the phone with an employee of Defendant to complain about this issue, but an employee of Defendant named Courtney also specifically responded to this review shortly after it was posted to Defendant's website.

31.     Over 3 years ago, another consumer stated the Product "worked great (other than a bit too noisy), and then [I] received the dreaded FO code.  Switched electric recept[a]cle, works about 20 minutes, then dies again with FO.  This should last more than 14 months."  Shortly after this review was posted, an employee of Defendant by the name of Ruth specifically responded to it.

32.     Over 3 years ago, another consumer stated the Product "[w]orked for one summer - now d[is]plays F0 error - IT is not the voltage of my outlet (as customer service told me), I have tried every outlet in my house."  In addition to speaking over the phone with Defendant's customer service representative, an employee of Defendant named Ruth also specifically responded to this complaint shortly after it was posted to Defendant's website.

33.     Over 3 years ago, another consumer complained that their Product "keeps getting a[n] 'F0' error, then stops [working]."  Shortly after this review was posted, an employee of Defendant by the name of Courtney specifically responded to this consumer's review in January of 2017.

34.     Over 3 years ago, another consumer complained that the Product showed an "error code F0 in less than a year."  Shortly after this review was left, an employee of Defendant by the name of Ruth specifically responded to this customer's review.

35.     Over 3 years ago, another consumer complained that their Product was "[d]ead on arrival" and "got a code of F0 after around ten minutes [of use]."

36.     Over 3 years ago, another consumer complained that their Product "[q]uit working (constant "FO" error) less than 12 months after purchase."

37.     Over 3 years ago, another consumer complained their Product "would run for about an hour or so and then give us an error code of F0. … I was told it's not something covered under warranty and therefore cannot be fixed.  I am dumfounded.  Am I the only one who is wondering why we have a warranty?  I find it disheartening to know that an error code built into the system came up just after the one year warranty and now I wasted over $200 on an appliance that is now apparently 'disposable' after one year."  Thus, this consumer spoke an employee of Defendant over the phone about the F0 defect.

38.     Over 3 years ago, another consumer complained that the F0 error code on their Product was a "common problem," and that they spoke to a customer service representative over the phone about this defect.

39.     Over 3 years ago, another consumer stated "[t]his is the start of year 2 for this dehumidifier.  It worked well last year," but then "[g]ot an F0 error code."  An employee from Defendant by the name of Courtney specifically responded to this review shortly after it was posted.

40.     Over 3 years ago, another consumer complained their Product showed an F0 error code, and that it was "purchased less than 2 years ago.  Called customer service and was told that it

is not repairable and that I must buy a new one at my expense."  Shortly after this review was posted, an employee of Defendant responded to it.

41.     Over 3 years ago, another consumer complained their Product "only last[ed] 1 ½ summers … F0 code came on after first full summer.  Frigidaire refuses to help us with this.  Very upsetting!"

42.     Over 2 years ago, another consumer complained their Product "ran for 1 hour and stopped with error code F0.  I have no proof of purchase so I have no warranty according to Frigidaire … Product is out for garbage."

43.     Over 2 years ago, another consumer complained their Product "only lasted 4 months and the F0 code comes up."

44.     Over 2 years ago, another consumer complained their Product was purchased in "May 2016" but then in "September 2017, it stopped working and gave me the fault code F0. … I made three calls to Frigidaire.  The[y] were very friendly and tried to be helpful but ultimately they said that they could not service it or replace it.  It was beyond my warranty."  An employee from Defendant responded to this complaint and said "[r]egrettably, the error code F0 doesn't involve any of the warranty covered systems."

45.     Over 2 years ago, another consumer complained their Product "broke down 6 months" after purchase, displaying an "F0" error code.

46.     These are just a small sampling of the numerous complaints Defendant has received concerning the F0 defect.  Indeed, Defendant has received similar complaints on its own website concerning the F0 Defect from consumers on a monthly, and sometimes even weekly basis for at least 4-5 years.  The complaints continue to this day.

47.     Even as recently as November 2019, a consumer complained that the Product "failed in the first year" and explained that "I bought this 9 months ago.  Really liked this until it stopped.  F0 error.  I cleaned the filter and pressed the filter reset button.  Seems ok then every time I come back to check on it I have the same error code … I'm seeing a lot of people with the same problem."

**B.    Defendant Knew About Complaints Posted To Websites Of Major Retailers**

48.    In addition to receiving countless complaints directly from consumers posted to its own website, Defendant also knew or should have known about the Product Defect through reviews posted to major retailers, such as Amazon.com and HomeDepot.com.  As is evident from the Products' reviews, Defendant's employees monitor and respond to reviews posted on retailer websites, just as it does for reviews posted on its own website, Frigidaire.com.

49.    Defendant knew about complaints posted to major retailers' website (or at bare minimum, should have known) because online reputation management (commonly called "ORM" for short) is now a standard business practice among most major companies and entails monitoring consumer forums, social media and other sources on the internet where consumers can review or comment on products.

50.    "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation."[1]  Many companies offer ORM consulting services for businesses.

51.    Like most companies, Defendant presumably cares about its reputation and regularly monitors on-line customer reviews because they provide valuable data regarding quality control issue, customer satisfaction and marketing analytics.  One-star reviews like those referenced above would be particularly attention-grabbing for Defendant's management because negative reviews are sometimes the result of serious problems or defects, and—just like any other company—Defendant presumably is sensitive to the reputational impact of negative on-line reviews.  Hence, Defendant's management knew or should have known about the above-referenced consumer complaints shortly after each complaint was posted.

52.    This holds especially true where, as here, the F0 Error Message complaints posted to Amazon.com and HomeDepot.com are extremely similar to the ones posted on Defendant's own

---

[1] https://en.wikipedia.org/wiki/Reputationmanagement#Online_reputation_management.

website.  And just like the complaints posted on Defendant's own website, the Amazon.com and HomeDepot.com are legion and go back for years.

### 1.  *Consumer Complaints Posted to Amazon.com*

53.  On June 15, 2015, a consumer complained "After 2 years, started getting the F0 error.  Now, it is useless.  It'll only stay on for about 5 minutes before it shuts down with the 'F0' error.  Frigidaire doesn't provide any support for this error code."

54.  On July 7, 2015, a consumer complained "The unit displayed an error F0 shutting off and began only working for 40 minute stretches after unplugging" and stated "these units have a very limited lifespan!"

55.  On December 31, 2015, a consumer complained "Loved it while it worked, but it conked out after only 11 months of use.  Got the dreaded F0 error code."

56.  On May 16, 2016, a consumer complained the Product "[d]ied after 5 months … giving an F0 error code."

57.  On May 27, 2016, a consumer complained the Product "worked great for the first season we had it … Approximately 1 year later … I tried to use it and it gave F0 error."

58.  Also, on May 27, 2016, a consumer complained "[i]t's now 2 years and two months and it keeps shutting down giving a F0 code."

59.  On July 6, 2016, a consumer complained the Product "[b]roke slightly after 1 year warranty period.  Only actually ran for 3 summer months.  Gets 'F0' code.  Would not recommend."

60.  On July 8, 2016, a consumer complained the Product "[d]ied with the F0 error in less than a year."

61.  On July 15, 2016, a consumer complained "Purchased this May 6, 2016.  It lasted ONE summer.  F0 error message …"

62.  On August 1, 2016, a consumer complained "[a]nother unit with repeated 'F0' error, after about a year.  Doesn't dehumidify anymore…"

63.  On August 15, 2016, a consumer complained "At least I got almost three months use out of it, but it's extremely disappointing to pay almost $270 for an appliance that conks out

before the end of summer. … [L]ast week, I noticed that there was no longer and water in the bin, and that's when I saw the dreaded 'F0' error message.  I unplugged it as the manual instructed, and then plugged it in again … and pretty soon 'F0' showed up again."

64.     On September 27, 2016, a consumer complained "[a]lso getting an F0 code … DON'T BUY this piece of junk if you need it to last more than 18 months !!!"

65.     On September 30, 2016, a consumer complained "after owning it just less than 14 months, the unit now continually shows the error code 'F0' on the control panel.  Unplugging the unit … and plugging the unit back in allows it to run, usually for less than an hour before it faults again … Appears to be built to fail just outside warranty."

66.     On October 5, 2016, a consumer complained "This dehumidifier was delivered to me on June 1, 2016. … Control panel began showing F0 error code.  Does not work at all anymore!"

67.     On October 20, 2016, a consumer complained the Product "[f]ailed at 1 yr. with 'F0' code."

68.     On November 11, 2016, a consumer complained they "[p]urchased the humidifier in July of 2016 and it lasted 3 months.  The dreaded F0 code kept repeatedly reappearing."

69.     On November 15, 2016, a consumer complained "[a]dd me to the list of frustrated customers with the persistent 'F0' error code.  Purchased 19 mo[nth]s ago."

70.     On December 1, 2016, a consumer complained "[w]e have had this product less than a year.  The last 5 months of use it's developed an error code of F0."

71.     On December 9, 2016, a consumer complained "I bought 2.  One just over a year ago and another about 6 months ago.  They work really well.  The problem is they have both started getting an error code of F0 … Just contacted by local Frigidaire service center and they said they don't work on them.  They said they would cost more to fix than buy new and they have no clue how to fix them.  These are too expensive to last a year or less."

72.     On February 19, 2017, a consumer complained "I've had this for almost 10 months and it just stopped working.  One day I noticed it wasn't running and saw it was displaying 'F0'.  If you check the manual it basically says it could eb due to operating conditions, but the operating

conditions are fine.  I've checked and double checked.  No matter what the unit will just stop running and display code 'F0.'"

73.     This is just a small sampling of the numerous complaints that mirror the complaints Defendant has received on its own website.  Dozens more reviews complaining of the F0 Error Message have been posted on a monthly, and sometimes even weekly basis over the last 4-5 years.  Even as recently as November 16, 2019, a consumer complained "I too am a victim of the dreaded F0 error after 13 months of use."

**2.     *Consumer Complaints Posted to HomeDepot.com***

74.     Just like with Frigidaire.com and Amazon.com, complaints concerning the F0 Error Message posted to HomeDepot.com are legion and go back for years.

75.     In fact, consumer outcry was so rampant that the F0 Error Message is the most popular question asked by consumers under the "Questions & Answers" section of the Product's webpage:



76.     Indeed, the F0 Error Message is such a pervasive problem among the Products that one Home Depot salesman told a customer that Defendant's Products were "prone to failure, showing an F0 error code and stopping."

77.     Here too, Defendant has been receiving complaints – both online and phone calls – about the F0 code dating as far back as 2015.

78.     For example, on November 24, 2015, a consumer complained "I was happy with the working of the unit until the fault display started showing F0.  I checked voltages etc. and could not find anything wrong.  I am disappointed the unit did not last past 3 months."

79.     On December 19, 2015, another consumer complained "I purchased a 70 pint Frigidaire Dehumidifier (Model FFAD7033R1) in June, 2015 which failed this December (6 months).  The unit stopped working and displayed an error Code FO…"  The consumer also stated that they "called Electrolux Service and was told the unit is not serviceable…"

80.     On July 22, 2016, another consumer stated that their Product "had a code (F0) on it."  On August 12, 2016, an employee of Defendant by the name of Ruth specifically responded to this review.

81.     On September 16, 2016, another consumer complained "[w]orked from May to mid August, then started getting F0 error."

82.     On October 14, 2016, another consumer complained "The dehumidifier worked for less than a month and then quit running and showed an F0 code. I tried it in every room and at many different outlets and it would always run for a few minutes and then stop and show the F0 code."  Defendant obviously saw this review because it indicates that "[t]his review was collected as part of a promotion."

83.     On November 10, 2016, another consumer stated that they were on their second unit because the first Product "stopped working a few months after purchase[] due to a F0 code."  An employee of Defendant specifically responded to this review on December 2, 2016.

84.     On December 15, 2016, another consumer complained "[p]urchased in June and by November it is shutting down and throwing F0 code."  An employee of Defendant by the name of Jennifer specifically responded to this review on January 5, 2017.

85.     On June 22, 2017, another consumer complained "[t]he unit worked great for 1 summer – since then get the F0 error – tried all the DIY fixes – still no luck."  An employee of Defendant by the name of Ciara specifically responded to this review on June 26, 2017.

**C.** **The Similarity of Complaints Is Further Indicia Of Defendant's Pre-Sale Knowledge**

86.     Defendant's management also knew (or should have known) about the F0 Error Message defect because of the similarity of complaints posted to Frigidaire.com, Amazon.com, and HomeDepot.com, which Defendant's employees monitor and respond to.  The fact that so many customers made similar complaints about the same product indicates that the complaints were not the result of user error or an anomalous incident, but instead a systemic problem with the Product. Here, the reports and complaints from consumers—whether made directly to Defendant's employees or posted on retailers' websites— were similar enough to put Defendant's management on notice that the incidents described were the result of a design defect, and that the Products were experiencing unusually high levels of complaints about the F0 Error Message defect.

87.     Defendant also would have had notice of the Product Defect as a result of product returns, replacements, or requests for refunds.

88.     In short, by 2016 at the latest, information from customer complaints and returns directly to Defendant, negative reviews on Defendant's website, and negative reviews on the websites of the Products' top retailers, whether alone or in the aggregate, would have put Defendant on notice of the Product Defect.

**D.** **Defendant Clearly Knows About the F0 Defect Because It Is Partially Disclosed In The Product's Manual**

89.     It is also clear that Defendant is aware of the F0 Defect because the Product's Owner's Manual explicitly addresses the F0 error code.

90.     Page 6 of the Owner's Manual states:  "If the display reads 'F0', check the following operating conditions.  Outlet voltage should be 115V±10% and the surrounding temperature should be with in the range of 41 °F (5 °C) to 90 °F (32 °C).  Unplug the unit and plug it in again under normal operating conditions.  <u>If the "F0" code persists, contact your Authorized Frigidaire Service Center</u>." (emphasis added).

91.     Accordingly, Defendant knows about the F0 defect and knows that "checking the [] operating conditions" may not resolve it.

**CLASS REPRESENTATION ALLEGATIONS**

92.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

93.     Plaintiff also seeks to represent a subclass of all Class Members who purchased the Products in the State of California (the "Subclass").  Excluded from the Class are persons who made such purchases for purpose of resale.

94.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

95.     At this time, Plaintiff does not know the exact number of members of the aforementioned Class and Subclass ("Class Members" and "Subclass Members," respectively); however, given the nature of the claims and the number of retail stores in the United States selling Defendant's Products, Plaintiff believes that Class and Subclass members are so numerous that joinder of all members is impracticable.

96.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

        (a)     whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

        (b)     whether Defendant's conduct was unfair and/or deceptive;

        (c)     whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

        (d)     whether Plaintiff and the Class sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

97.     With respect to the Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether

Defendant violated the California Consumer Legal Remedies Act as well as California's False Advertising Law and Unfair Competition Law.

98.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, Defendant's Products, and Plaintiff sustained damages from Defendant's wrongful conduct.

99.     Plaintiff will fairly and adequately protect the interests of the Class and Subclass and has retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Class or the Subclass.

100.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

101.    The prosecution of separate actions by members of the Class and the Subclasses would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the Class and the Subclasses even where certain Class or Subclass members are not parties to such actions.

## COUNT I

### Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*

102.    Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

103.    Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendant.

104.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of

another."  Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

105.    Defendant violated Civil Code § 1770(a)(5), (a)(7) and (a)(9) by holding out Products as fit for use as dehumidifiers, when in fact the Products were defective and useless.

106.    The F0 Error Message defect at issue here involves a critical electrical and functional component of the Products, and it renders the Products useless.

107.    Defendant had exclusive knowledge of the F0 Error Message defect, which was not known to Plaintiff or class members.

108.    Defendant made partial representations to Plaintiff and class members, while suppressing the Defect.  Specifically, by displaying the product and describing its features, the product packaging and Defendant's website implied that the product was suitable for use as a dehumidifier, without disclosing that the Products had a critical defect that would render the Products useless.

109.    Plaintiff and the members of the Subclass have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

110.    On October 18, 2019, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code §1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.  Defendant did not respond to the letter.

111.    Plaintiff and the Subclass members seek all relief available under the CLRA, including damages, restitution, the payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT II
### (Violation California's Unfair Competition Law)

112.   Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

113.   Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendant.

114.   By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

115.   Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.

116.   Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

117.   As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

118.   Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

119.   Plaintiff and the other Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled product.

120.   There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the defective nature of the Products.

121.   Plaintiff and the other Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

122.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Subclass.

123.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendant to: (a) provide restitution to Plaintiff and the other Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; (c) pay Plaintiff's and the Subclass' attorney's fees and costs.

## COUNT III

### (Unjust Enrichment)

124.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

125.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

126.     Plaintiff and Class members conferred benefits on Defendant by purchasing the Products.

127.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products were unfit for use as dehumidifiers.  These omissions caused injuries to Plaintiff and Class members because they would not have purchased the Products if the true facts were known.

128.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

## COUNT IV

### (Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq.* and California Commercial Code § 2314)

129.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

130.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

131.    Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq., and California Commercial Code § 2314, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.  In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose (here, to be used as dehumidifiers) and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

132.    The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

133.    Plaintiff and the Class members who purchased one or more of the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

134.    Defendant is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

135.    Defendant sells its products through a network of authorized and certified dealers including Best Buy, Home Depot and Lowe's.  Defendant has entered into various contractual agreements with its dealers.  The dealers were not the intended beneficiaries of the warranties associated with the Products.  Plaintiff and the Class members were the intended beneficiaries of the warranties associated with the Products.

136.    Defendant impliedly warranted to retail buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements.  Defendant breached these implied warranties because the Products were defective.  Therefore, the

Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

137.    Plaintiff and Class members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

138.    The Products were not altered by Plaintiff or Class members.

139.    The Products were defective at the time of sale when they left the exclusive control of Defendant.  The F0 Error Message defect described in this complaint was latent in the product and not discoverable at the time of sale.

140.    Defendant knew that the Products would be purchased and used without additional testing by Plaintiff and Class members.

141.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the Products if they knew the truth about the Products, namely, that they were unfit for use as dehumidifiers.

## COUNT V
### (Violations of California's False Advertising Law)

142.    Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

143.    Plaintiff brings this cause of action individually and on behalf of the proposed Subclass.

144.    As alleged more fully above, Defendant has falsely advertised the Products by failing to disclose they are defectively designed and thus unfit for use as dehumidifiers.

145.    Plaintiff and the other members of the Subclass have suffered injury in fact and have lost money or property as a result of Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

## COUNT VI
### (Violation Of The Magnuson-Moss Warranty Act,
### 15 U.S.C. §§ 2301, *et seq.*)

146.    Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

147.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

148.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

149.     Plaintiff and the Class and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

150.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

151.     In connection with the marketing and sale of the Products, Defendant impliedly warranted that the Products were fit for use as dehumidifiers.  The Products were not fit for use as dehumidifiers due to the F0 Error Message defect described in the allegations above.

152.     By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiff and the Class and Subclass members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the Class and Subclass members.

153.     Plaintiff and the Class and Subclass members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the defective nature of the Products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.     For an order certifying the nationwide Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.     For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

d.     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.     For pre-judgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of monetary relief;

g.     For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated:  March 25, 2020                         Respectfully submitted,

                                          **BURSOR & FISHER, P.A.**

                                          By:_____*/s/ L. Timothy Fisher*_____
                                               L. Timothy Fisher

                                          L. Timothy Fisher (State Bar No. 191626)
                                          Joel D. Smith (State Bar No. 244902)
                                          1990 North California Blvd., Suite 940
                                          Walnut Creek, CA  94596
                                          Telephone: (925) 300-4455
                                          Facsimile: (925) 407-2700
                                          Email: ltfisher@bursor.com
                                                     jsmith@bursor.com

                                          *Counsel for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Felix Obertman in this action.  Plaintiff Felix Obertman resides in Elk Grove, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Eastern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 11th day of December 2019.


*/s/ L. Timothy Fisher*
———————————————
L. Timothy Fisher